THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**1ST TRANSPORT, LLC, d/b/a,**
**TARA TRANS**                                    CASE NO.   8:19-cv-02595
**A Florida Limited Liability Company,**

    **Plaintiff,**

vs.

**ACCESS 2 CARE, LLC,**
**A Missouri Limited Liability Company,**

    **Defendant.**

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, 1ST TRANSPORT, LLC ("Plaintiff"), a Florida Limited Liability Company, by and through its undersigned counsel, hereby files this Second Amended Complaint against ACCESS 2 CARE, LLC, a Missouri Limited Liability Company, and states as follows:

### JURISDICTION AND VENUE

1. Venue is proper in this Judicial Circuit as all the events arising out of this cause arose in this Judicial District.

2. Plaintiff brings its complaint, and each claim, under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

3. In 2017, A2C paid Plaintiff approximately $2,066,000.00 for providing transportation services.

4. In 2018, A2C paid Plaintiff approximately $750,000.00 for providing transportation services.

5. While A2C has blocked Plaintiff's access to its payment portals, Plaintiff's business records solely for the months of January – March (and part of April) 2018, reflect non-payment in the amount of $55,831.40.  *See* Exhibits A-1 and A-2 ("Unpaid Trip List").

6. Plaintiff alleges that A2C did not pay approximately $30,000 for transporting nurse attendants in 2016.

7. Plaintiff was further damaged monetarily upon purchasing 2 sets of shuttle vans for an approximate total of $160,000 where the vans remained underutilized.

## PARTIES

8. Plaintiff is a Florida Limited Liability Company, with its members citizens of Florida, and its principal place of business in Pasco County, Florida.

9. Defendant A2C is a Missouri Limited Liability Company, with its sole member also a Missouri Limited Liability Company and having a Delaware corporation as its sole member, and is therefore, within the jurisdiction of this Court.  *See* Exhibit B (Defendant A2C's Response to Plaintiff's Limited Interrogatory).

## FACTUAL ALLEGATIONS

10. On January 16, 2015, A2C hired Plaintiff to provide "medical transportation, non-medical transportation ambulance, Para transit and wheelchair services to A2C customers in various locations".  *See* Exhibit C ("Agreement").

11. The Agreement's rate schedule specified a one-way trip charge for ambulatory customers at a rate of $12.50 that included transportation for 5 miles from a customer's home to a treatment facility or vice versa.  A trip exceeding 5 miles would be compensated at $1.60 per mile.

12. Approximately six months later, A2C and Plaintiff modified the Agreement, in writing and verbally, to provide services for A2C's wheelchair customers.

13. A2C compensated Plaintiff for transporting wheelchair customers at a one-way rate of $25.00 and $2.00 per mile after the initial 5 miles.

14. On or about September 2016, A2C and Plaintiff again modified the Agreement to enable Plaintiff to provide transportation services to and from PPEC (Prescribed Pediatric Extended Care) facilities that cater exclusively to children.

15. A2C's manager "Jason" informed Plaintiff that transportation services were needed for PPEC facilities at The Bishop Children's Center in St. Petersburg, Florida and the "Drew Street" facility in Clearwater, Florida to replace A2C's existing transportation provider.

16. In reliance of A2C's representations, Plaintiff purchased 6 shuttle vans for approximately $70,000 to provide transportation services for children at PPEC facilities.

17. As part of providing transportation services, the newly acquired shuttle vans were used exclusively for A2C's customers receiving treatment at PPEC facilities to ensure immediate availability for emergencies.

18. While A2C had used other transportation providers to transport children to and from PPEC facilities, A2C did not inform Plaintiff that children had to be accompanied by nurse attendants.

19. Transporting a nurse attendant and child round-trip from a PPEC facility resulted in a total of four-legs – "A-B-C-D".

20. A2C generated trip numbers associated with each leg of a trip, such as ###-A, ###-B, to enable Plaintiff to submit a corresponding bill for payment via A2C's payment portal.

21. However, A2C did not create trip numbers to allow Plaintiff to bill for transporting nurse attendants.

22. While A2C paid for transporting PPEC customers, A2C did not pay Plaintiff approximately $30,000 for two months for the additional legs of a round trip associated with transporting nurse attendants.

23. On or about January 2017, after Plaintiff's repeated demands, A2C began to generate trip numbers for transporting nurse attendants.

24. Contemporaneously, A2C rates were upgraded to reflect for the four-legs of a round trip associated with a PPEC customer – $50 for an ambulatory customer and $100 for a wheelchair customer.

25. Soon after, in retaliation, A2C informed Plaintiff to stop providing services for the Drew Street facility in Clearwater, Florida.

26. On or about May 2017, A2C's Transportation Manager Ryan Delos Reyes threatened to eliminate Plaintiff's service areas if Plaintiff did not agree to lower the trip rate by 10 percent.

27. While Plaintiff acquiesced to the lower rate, A2C subsequently took away Pinellas County's service area from Plaintiff.

28. On or about November 2017, A2C approached Plaintiff to provide transportation services for Fort Myers and Naples, Florida and the Drew Street facility in Clearwater, Florida at a new, higher rate.

29. In reliance upon A2C's representations that Plaintiff would provide services at the three aforementioned locations, Plaintiff purchased 6 shuttle vans with extra capacity for multiple wheelchairs for approximately $90,000.

30. Arbitrarily, A2C's manager "Jason" did not give Fort Myers' service area to Plaintiff.

31. While 3 of the shuttle vans were specially equipped (and required higher insurance coverage) and purchased to service Fort Myers, Florida, Plaintiff was relegated to using the vehicles as spare vans.

32. Plaintiff consistently invoiced A2C for transportation services in a timely manner.

33. Nevertheless, A2C began to scrutinize Plaintiff's billing errors and characterized an error as fraud.

34. A2C's Transportation Manager Ryan Delos Reyes stated, "I will destroy the company".

35. A2C would audit completed trips by Plaintiff contrary to its established procedures to avoid payment for services.

36. While Plaintiff continued to submit timely invoices for approximately 2000-3000 monthly trips, A2C began to unreasonably audit 90% of all completed trips.

37. To comply with unreasonable audits Plaintiff had to hire additional employees and then train and certify them.

38. A2C audited a large volume of completed trips to prevent Plaintiff from providing audit documentation in a timely manner.

39. A2C would disregard audit documentation received from Plaintiff and allow payment deadlines to lapse.

40. A2C would not make payments for trips where it had caused payment deadlines to lapse.

41. Even when Plaintiff complied with the A2C's audit and appeal procedure, A2C would arbitrarily deny payment for completed trips due to trivialities.

42. A2C would audit trips arbitrarily and without cause.

43. A2C would deny payment for trips arbitrarily and without cause.

44. A2C would deny payment for trips after an appeal arbitrarily and without cause.

45. A2C would also reduce the payment amount owed for services rendered.

46. A2C deleted completed transportation trips from its electronic payment portal to avoid payment to Plaintiff.

47. When notified of deleted trips, A2C would not add the deleted trips in a timely manner and designate the trips as being submitted "past deadline".

48. A2C would unnecessarily audit cleared trips to cause trips to become "past deadline".

49. A2C would not generate trip numbers to allow Plaintiff to submit a corresponding invoice for payment.

50. On or about April 2018, A2C arbitrarily eliminated most of Plaintiff's service areas.

51. On or about October 2019, after Plaintiff's repeated demand for payment of monies owed, A2C blocked Plaintiff from accessing the payment portal.

52. Plaintiff had exhausted A2C's Claims Appeals Process, or in the alternative, exhaustion of Claims Appeals Process was not required because:

   a) It would prove futile for Plaintiff to do so, or in the alternative,

   b) The Plaintiff has been wrongfully denied access to any applicable appeal procedures.

## COUNT I
## BREACH OF CONTRACT

53. Plaintiff incorporates all allegations in Paragraphs 1 through 52 above.

54. The Agreement requires A2C to pay for transportation services within twenty-one days after receipt of an invoice from Plaintiff.

55. A2C's failure to pay invoices within twenty-one days was a breach of the Agreement. Plaintiff has been damaged by the breach set forth herein, by not being paid for services provided to A2C.

56. A2C did not adhere to its procedures for payment of invoices submitted by Plaintiff.

57. A2C also prevented Plaintiff from billing for transportation services by not generating trip numbers for work performed.

58. Plaintiff was further damaged when it purchased shuttle vans in reliance of A2C's representations that Plaintiff would provide transportation for specific locations.

59. A2C's breach was either intentional or, alternatively, negligent.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for damages, but in no event less than $75,000, and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

60. Plaintiff incorporates all allegations in Paragraphs 1 through 52 above.

61. Plaintiff and A2C entered into the "Agreement" for Plaintiff to provide transportation services for A2C's customers.

62. Plaintiff timely billed A2C for transportations services provided to A2C's customers.

63. Plaintiff was also prevented from timely billing when A2C did not generate trip numbers for transportation services.

64. A2C threatened Plaintiff into reducing trip rates for transporting customers.

65. Plaintiff complied with A2C's audit procedures and deadlines.

66. Plaintiff also utilized A2C's appeals process.

67. Nevertheless, contrary to ¶¶ 5 (and Schedule A), 9, 15 of the Agreement, A2C breached specific contractual provisions for its scheduling, invoicing, and Claims Appeals Process.

68. Plaintiff purchased shuttle vans in reliance of A2C's representations that Plaintiff would be scheduled to service specific locations.

69. Subsequently, A2C arbitrarily eliminated service locations where Plaintiff was scheduled to provide services.

70. A2C wrongfully denied payments due to Plaintiff in an unreasonable manner, while inducing it to keep providing transportation to A2C's customers.

71. A duty of good faith and fair dealing is implicit in all enforceable contracts under Florida law, and implied in the performance of every term of an express contract.

72. By repeatedly and systematically engaging in practices that lead to wrongful denial of invoices it received from Plaintiff, and other actions alleged herein, A2C continually demonstrated bad faith in performing the express terms of this enforceable contract.

73. Plaintiff was injured by A2C's bad faith and unfair dealing because it continually relied on assurances made by A2C that A2C would perform its obligations under the contracts alleged herein, and the other false promises and misrepresentations made to it by A2C.

74. As a result, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for damages, but in no event less than $75,000, and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

## COUNT III
## ACTION FOR UNJUST ENRICHMENT

75. Plaintiff incorporates all allegations in Paragraphs 1 through 52 above.

76. This action for unjust enrichment against A2C is pleaded in the alternative to, or in addition to the other counts of this Complaint.

77. For purposes of this Count, Plaintiff alleged that the actions described herein were outside of the provisions of the Agreement.

78. By having Plaintiff provide services to its customers and then by not paying A2C a correct or fair price or non-payment, A2C is obtaining benefit.

79. A2C collects fees from its customers to provide them with transportations services.

80. By providing transportation services to A2C's customers, Plaintiff conferred a benefit upon A2C.

81. A2C is aware of this benefit, solicited it, and accepted it.

82. However, A2C retained these benefits by denying, diminishing, and delaying payment for these services while continuing to induce A2C to provide them.

83. It would be inequitable to allow A2C to retain these benefits under the circumstances, and it is unjustly enriched thereby.

84. As set forth above, Plaintiff has no adequate remedy at law for A2C's actions that led to its unjust enrichment.

85. Plaintiff suffered damages as a result.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for damages, but in no event less than $75,000, and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff 1ST TRANSPORT, LLC demands a trial by jury in this action.

Dated: June 25, 2020

Respectfully submitted,

/s/ Derek P. Usman
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com

**The Usman Law Firm, P.A.**
20701 Bruce B Downs Blvd.
Suite 207
Tampa, FL 33647
(813) 377-1197 telephone
(312) 528-7684 facsimile

*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing upon:

McDermott, Will, & Emery, LLP
Michael Austin
Email: maustin@mwe.com
Joseph Wasserkrug
jwasserkrug@mwe.com
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-4336
T: 305.347.6517 | F: 305.675.8403
Counsel for Defendant Access 2 Care, LLC

/s/ Derek P. Usman
Derek P. Usman, Attorney