UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1ST TRANSPORT, LLC, d/b/a
TARA TRANS, a Florida Limited
Liability Company,

        CASE No.:    8:19-cv-02595

    Plaintiff,

v.

ACCESS 2 CARE, LLC, d/b/a
AMERICAN MEDICAL RESPONSE, INC.,
a Missouri Limited Liability Company,

    Defendant.
_____/

## DEFENDANT ACCESS 2 CARE, LLC'S
## DISPOSITIVE MOTION TO DISMISS SECOND AMENDED
## COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Access 2 Care, LLC ("A2C" or "Defendant"), by and through undersigned counsel, hereby files this Motion to Dismiss ("Motion") with respect to Plaintiff 's, 1st Transport, LLC d/b/a Tara Trans ("Plaintiff" or "Tara Trans") Second Amended Complaint and Demand for Jury Trial ("SAC"). In support of this Motion, A2C states as follows:

### INTRODUCTION

Plaintiff has filed the SAC in its third flawed attempt to assert claims against A2C. While Plaintiff's SAC has addressed the jurisdictional deficiencies in its first two complaints, the SAC's allegations still fall short of meeting the pleading standards under the Federal Rules of Civil Procedure.[1]

___

[1] This Court's Order dated May 19, 2020, dismissed Plaintiff's Amended Complaint [ECF No. 7] for lack of diversity jurisdiction. *See* Order [ECF No. 18]. Having decided that the Amended Complaint failed to properly allege diversity

1

The SAC fails to state any viable claim upon which relief can be granted, and dismissal is warranted with respect to each of the three (3) defective counts set forth in the SAC. Specifically, Plaintiff purports to assert claims against A2C for breach of contract (Count I), breach of implied duty of good faith and fair dealing (Count II), and unjust enrichment (Count III). *See* SAC at 6–9. However, as detailed below, the SAC is completely devoid of the requisite factual allegations necessary to state any viable claim for relief. Furthermore, Plaintiff's purported claims are negated by governing law.

With respect to the breach of contract claim, among other defects, the convoluted and conclusory allegations in the SAC do not establish (and cannot establish) that Plaintiff fully performed its obligations under the Subcontractor Agreement ("Agreement") between Plaintiff and A2C for each of the separate trips that purportedly make up Plaintiff's claims, or that Plaintiff is entitled to any payment from A2C. Instead, Plaintiff ignores the specific terms of the Agreement attached to the SAC, and Plaintiff merely makes generalized and conclusory allegations that A2C did not pay Plaintiff for certain Services under the Agreement.[2] *See generally* SAC. Additionally, Plaintiff fails to adequately allege compliance with the mandatory dispute resolution process set forth in the Agreement, which is a condition precedent to bringing any claims against A2C in this lawsuit. *See* SAC Ex. B.

Plaintiff's defective count for breach of the implied covenant of good faith and fair dealing must also be dismissed because Florida law does not recognize such a claim as an independent

---

jurisdiction, this Court did not decide any other issues presented in A2C's Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law [ECF No. 9]. Accordingly, and pursuant to this Court's prior Order, A2C files the instant Motion. *See* Order [ECF No. 18] ("Defendant [A2C] will file a renewed motion to dismiss after jurisdictional discovery is concluded and Plaintiff files an amended complaint.").

[2] The Agreement defines "Services" as, "transportation services described in Schedule 'A' hereto." SAC Ex. B § 1. In turn, Schedule A to the Agreement describes the Services as, "'Ambulatory Services' non-Ambulance and non-Wheelchair transportation provided to ambulatory patients[.]" *Id*. at Schedule A.

cause of action, and Plaintiff failed to allege any claim that is not entirely duplicative of a claim for breach of contract. Similarly, governing law dictates that Plaintiff's count for unjust enrichment fails because a plaintiff cannot pursue such a claim where an express contract exists concerning the same subject matter. Here, the Agreement governs and therefore dismissal of Count III is required. Accordingly, A2C requests this Court dismiss the SAC in its entirety.

## MEMORANDUM OF LAW

### LEGAL STANDARD

"[T]o survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a complaint must contain "factual allegations [that] are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Garcia-Catalán v. United States*, 734 F.3d 100, 1033 (1st Cir. 2013) (internal quotation marks omitted). Under this standard, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. While it is true that a complaint attacked by Rule 12(b)(6) need not contain detailed factual allegations, the plaintiff's obligation to provide the grounds for the entitlement to relief requires more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

Factual allegations must be enough to raise a right to relief above the speculative level, and it is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* Moreover, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

3

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (alteration in original) (citation omitted).

When analyzed under the foregoing standards, the SAC fails to state any claim against A2C. Therefore, dismissal of the entire SAC is warranted under Rule 12(b)(6).

## ARGUMENT AND AUTHORITIES

### I. The SAC fails to state any viable claim upon which relief may be granted.

Each of Plaintiff's three (3) counts in the SAC must be dismissed for failure to state a viable claim for relief under the governing law. As detailed further below, Plaintiff's vague, ambiguous, and conclusory allegations fail to establish any claims for relief; therefore, dismissal is appropriate.

#### A. Count I fails to state a claim for breach of contract.

At the outset, under Florida law, "[t]he elements of an action for breach of contract are: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Rollins, Inc.*, 951 So. 2d at 876.[3]  The law is clear that "Plaintiff's performance is a 'condition precedent' to his action for defendant's breach, which should be alleged and proved prima facie." *Branch Banking and Trust Co. v. S&S Dev., Inc.*, No. 8:13-cv-2776, 2015 WL 12683834, at *6 (M.D. Fla. June 30, 2015) (quoting *Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., Inc.*, 366 So. 2d 90, 92 (Fla. 1st DCA 1979)). Florida law requires that "to maintain a cause of action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Rollins, Inc. v. Butland*, 951 So. 2d 860,

---

[3] "This Agreement . . . shall be interpreted and enforced in accordance with the laws of the state where the Services are performed, without regard to the conflict of laws provisions thereof, and the federal laws of the United States applicable therein[.]" Compl. Ex. B § 31.

4

876 (Fla. 2d DCA 2006); *see also In re Standard Jury Instructions—Contract and Business Cases*, 116 So. 3d 284, 306 (Fla. 2013) (mem.) ("2. (Claimant) did all, or substantially all, of the essential things which the contract required [him][her][it] to do [or that [he][she][it] was excused from doing those things][.]") (citing *Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st DCA 1990); *4720 SE 15th Ave. LLC v. AFCO Credit Corp.*, No. 2:19-cv-278-FtM-38NPM, 2019 WL 3997415, at *2 (M.D. Fla. Aug. 23, 2019) (applying Florida law) ("The claimant must also prove performance of its obligations under the contract.").

As an initial matter, Plaintiff expressly alleges that A2C complied with its contractual obligations by paying Plaintiff approximately $2,816,000 "for providing transportation services" during 2017 and 2018. SAC ¶¶ 3–4. This is in direct conflict with the Complaint's other allegations asserting breach of contract against A2C. Indeed, A2C complied with all of its obligations under the Agreement, and to the extent any payments were not made to Plaintiff, the Agreement provides detailed provisions regarding Plaintiff's contractual obligations to receive payment and circumstances that will result in nonpayment.

The Agreement specifically states, "A2C shall schedule and request any and all Services to be provided by Subcontractor pursuant to this agreement. All Services will be scheduled according to the procedures provided for in the Network Provider Requirements, as modified from time to time by A2C in its sole discretion and attached hereto as Schedule C and incorporated herein by this reference." SAC Ex. B § 5. In turn, the Network Provider Requirements lists detailed requirements for scheduling, assignment of trips, the process for accepting and rejecting trips, actions or failures to act that result in the deletion of trips, among other requirements and provider responsibilities. *See id.* at Schedule "C" § 10. For example, the Network Provider

Requirements state, "A2C will assign every trip an authorization number. Trips performed without prior authorization from A2C will not receive payment." *Id*. at § 10.4.

Section 9 of Agreement further sets forth the payment procedures, "[p]rior to or at the commencement of any scheduled Service, A2C shall instruct Subcontractor to bill either: (i) a third-party payor or Patient; or (ii) A2C." *Id*. at § 9. Moreover, Section 9(ii) of the Agreement provides, in pertinent part, as follows:

> *Services billed to A2C.* For any Services for which A2C has accepted responsibility for payment and A2C has provided Subcontractor with an authorization number, A2C shall pay Subcontractor within twenty-one (21) days of receipt of an invoice in a format reasonably acceptable to A2C. ***Subcontractor shall submit its invoice within forty-five (45) days of the date that Services were provided by Subcontractor – failure to submit its invoice within this time period will result in non-payment by A2C to Subcontractor.***

*Id*. at § 9(ii) (emphasis added). Plaintiff never alleges that it performed any authorized Services, as that term is defined in the Agreement, for which A2C accepted responsibility for payment or that Plaintiff submitted an invoice in a format reasonably acceptable to A2C within forty-five days of the time such Services were rendered that were not paid. Plaintiff therefore does not allege (and cannot allege) that it timely submitted any invoices to A2C for payment in accordance with Section 9(ii) as referenced above. Plaintiff's *self-generated* Exhibits A-1 and A-2 to the SAC and other conclusory allegations are insufficient to establish, even at the pleading stage, that it complied with *all* of its contractual obligations as is necessary to state a claim. Additionally, while Plaintiff does allege timely submission of invoices, albeit in conclusory fashion, timeliness is merely one of many of Plaintiff's contractual obligations. The SAC completely fails to mention Plaintiff's additional obligations.

Notably, the Agreement specifically enumerates other situations in which payment is not owed:

> *Services billed to Payors or Patients.* If A2C directs Subcontractor to bill a third-payor or Patient, A2C will provide Subcontractor with Patient billing information, including all documentation available to A2C that is necessary for third-party payor reimbursement and determination of medical necessity when applicable. ***Subcontractor shall be responsible for all Patient and third party billing*** and shall bill in accordance with all applicable laws and any applicable membership agreement between Patient and health plan. ***Subcontractor shall not seek payment from A2C*** or A2C's customer for any such Services and neither A2C nor its customer shall have any financial responsibility for such Services.

*Id*. § 9(i) (emphasis added). The Agreement contains several other requirements that Plaintiff must comply with and perform in order to support any claim for payment from A2C. *See, e.g.*, *id*. at §§ 7 ("Standards for Services"), 8 ("Trip Management"), ("Compliance with the terms of A2C's contract with the client"), 23 ("Compliance Program and Code of Conduct"), 25 ("Vehicle and Personnel Requirements"), 26 ("Training Requirements"), 27 ("Background Investigation").

Given the strict regulatory landscape in which A2C operates, its billing, invoicing, and claim submission requirements must be fully adhered to for subcontractors like Plaintiff to have any entitlement to payment. Indeed, A2C's Business Code of Conduct & Ethics, which is incorporated into the Agreement, specifically advises Plaintiff, and all of A2C's subcontractors, that, "If you commit a knowing and willful violation of federal rules and regulations or billing requirements, both you and the Company [A2C] could be prosecuted civilly and criminally under a 'false claims' theory. ***Even mistakes or erroneous statements*** can result in severe consequences for the Company and for responsible individuals. Thus, ***it is essential that you understand and***

7

*comply with all claim submission rules*."[4]  Business Code of Conduct & Ethics at 13 (emphasis added).[5]

Plaintiff's failure to include allegations that establish performance of its own contractual obligations under the Agreement, or that establish A2C's purported payment obligations for the specific services at issue mandates dismissal of Count I.

### B. Count II fails to state a claim for breach of the implied duty of good faith and fair dealing.

In Count II, Plaintiff attempts to assert a claim against A2C for breach of the implied duty of good faith and fair dealing.  But "Florida law does not recognize breach of a duty of good faith and fair dealing as an independent cause of action, but rather recognizes such claim as a breach of a specific contractual obligation."  *True Title, Inc. v. Blanchard*, No. 6:06-cv-1871, 2007 WL 430659, at *5 (M.D. Fla. Feb. 5, 2007).  To allege a claim for breach of implied duty of good faith and fair dealing, "a plaintiff must allege that a specific contractual provision has been breached, causing it damages."  *Id*.  "However, a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied duty is duplicative of the companion cause of action alleging breach of contract."  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000); *see also Long v. Murray*, No. 6:09-cv-1320, 2009 WL 4042961, at *6 (M.D. Fla. Nov. 20, 2009) ("Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must therefore be dismissed because the conduct underlying the claim is identical to the conduct underlying the breach of contract claim in Count II.").

---

[4] *See* SAC Ex. B § 23 ("**Compliance Program and Code of Conduct.** A2C has made available to the Subcontractor a copy of its Code of Conduct, Anti-kickback policies and other compliance policies, as may be changed from time-to-time, at A2C's web site, located at: www.Access2care.net, and the Subcontractor acknowledges receipt of such documents.  A2C warrants that its personnel shall comply with A2C's compliance policies, including training related to the Anti-kickback Statute.").

[5] An excerpted copy of the Business Code of Conduct & Ethics is attached hereto as **Exhibit A**.

8

DM_US 170152143-1.093004.0035

A claim for breach of the implied covenant of good faith and fair dealing typically arises in two situations, "1.) the contract is ambiguous about the permissibility of the conduct, or 2.) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated." *Shibata*, 133 F. Supp. 2d at 1318. "To allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id*. at 1319.

Count II contains no allegations that the Agreement is ambiguous or that some conduct was taken by A2C pursuant to a grant of discretion, the scope of which has not been designated in the Agreement. *See id*. Such allegations, even if made, would be in conflict with the Agreement, which clearly defines the obligations of the parties in detail, as described above in Section I.A of this Motion and as further set forth in the Agreement itself.

Plaintiff also fails to sufficiently identify an express term of the Agreement that its purported claim relates to. *See id.* at 1318 ("The covenant must relate to the performance of an express term of the contract, and it is not an abstract and independent term of a contract which may be asserted as a source of a breach when all other terms have been performed pursuant to the contract requirements."). Paragraph 72 of the SAC makes clear that Plaintiff cannot identify such an express term, as the Complaint vaguely states, "By repeatedly and systematically engaging in practices that lead to wrongful denial of invoices it received from Plaintiff, and other actions alleged herein, A2C continually demonstrated bad faith in performing the express terms of this enforceable contract." SAC ¶ 72. Indeed, paragraph 72 appears to be an attempt at an insufficient

9

threadbare recital of the elements of a claim for breach of the implied covenant. *See Iqbal*, 556 U.S. at 678.

Plaintiff further alleges, "contrary to ¶¶ 5 (and Schedule A), 9, 15 of the Agreement, A2C breached specific contractual provisions for scheduling, invoicing, and Claims Appeals Process." SAC ¶ 67. This conclusory allegation, unsupported by any facts, again merely takes issue with purported nonpayment. Section 5 of the Agreement simply states that A2C will schedule and request Services from Plaintiff, the Complaint makes no mention of how a breach of this provision is even possible, because it is not. Section 9 of the Agreement, as stated above, defines the invoicing and payment process, and is the identical basis for Count I. Finally, as set forth below, Section 15 of the Agreement sets forth the dispute resolution process, which Plaintiff itself did not abide by. Paragraph 67, along with the other allegations pertaining to Count II are nothing more than an insufficient attempt to plead the elements of a claim for breach of implied warranty of good faith and fair dealing, but does not, and cannot, demonstrate an entitlement to relief under such a claim.

Simply put, Plaintiff's allegations in Count II are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing and are merely duplicative of Plaintiff's similarly insufficient allegations in its breach of contract claim. Accordingly, Count II should be dismissed.

### C. Count III for unjust enrichment fails to state a claim.

To state a claim for unjust enrichment under Florida law, a plaintiff must allege: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof

10

to the plaintiff." *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3d DCA 2017) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996)).  Significantly, "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).

Plaintiff cannot maintain a cause of action for unjust enrichment where it simultaneously brings a claim based upon an express contract covering the same subject matter.  *See Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) ("[U]pon a showing that an express contract exists . . . the unjust enrichment or promissory estoppel count fails.") (quoting *Mobil Oil Corp. v. Dade County Esol Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)); *see also Kovtan v. Frederiksen*, 449 So. 2d 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."); *see also BK Marine Constr., Inc. v. Skyline Steel, LLC*, 231 So. 3d 469, 472 (Fla. 4th DCA 2017) ("The existence of this express contract necessarily defeated SKY's unjust enrichment claim.").

While Plaintiff attempts to disclaim the Agreement in paragraph 77, the Agreement is attached to, and incorporated into, the SAC.  Moreover, Plaintiff expressly incorporates paragraphs 1–52 of the SAC (including allegations that the Agreement governed the relationship between the parties) into the unjust enrichment count, which serves to negate Plaintiff's flawed unjust enrichment claim.

The Agreement expressly governs the subject matter at issue.  Indeed, the first section of the Agreement states:

> 1.  **Provision of Services.** Subcontractor will provide that transportation services described in Schedule "A" hereto (the "Services") to Clients or Recipients (collectively referred to as "Recipients") on the conditions, if any, described in Schedule "A"

11

>and in the service area(s) described in Schedule "A" (the "Service Area") only when and as requested by A2C.

SAC Ex. B § 1.  Comparing the allegations in Plaintiff's breach of contract count with those in its unjust enrichment count further highlights the conflict between the claims.  *Compare* SAC ¶ 55 ("A2C's failure to pay invoices within twenty-one days was a breach of the Agreement.  Plaintiff has been damaged by the breach set forth herein, by not being paid for services provided to A2C.") *with* SAC ¶ 82 ("However, A2C retains these benefits by denying, diminishing and delaying payment for these services while continuing to induce A2C to provide them.").

Accordingly, Plaintiff's claim for unjust enrichment, like its claim for breach of the implied covenant of good faith and fair dealing, is duplicative of its claim for breach of contract and cannot be maintained given the presence of an express written contract governing the identical subject matter.  Count III must be dismissed.

### D. Plaintiff fails to allege compliance with the Agreement's dispute resolution provision.

Finally, Plaintiff's SAC must be dismissed because it fails to adequately allege that Plaintiff complied with and satisfied all of the conditions precedent to filing the lawsuit.  Once a defendant denies that conditions precedent have been fulfilled, "plaintiff then bears the burden of proving the conditions precedent, which the defendant has specifically joined in issue, have been satisfied."  *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

The Agreement sets forth specific procedures for resolving disputes prior to the initiation of a lawsuit.  Section 15 of the Agreement states:

>**Dispute Resolution.**  Subcontractor [Tara Trans] acknowledges and agrees that in the event of a dispute arising out of the relationship between A2C and the Subcontractor and the services provided herein, Subcontractor shall look solely to A2C to resolve this dispute, and at no time, shall Subcontractor pursue a resolution of any dispute related to this Agreement with either the client or any

>agency thereof.  ***All disputes involving payment of claims <u>shall</u> be resolved according to the procedure outlined in the Claims Appeals Process in the Network Provider Manual.***  If necessary, a dispute shall be resolved in a court of competent jurisdiction and according to the laws of the State.

SAC Ex. A § 15 (emphasis added).  In turn, the Network Provider Manual, incorporated into the Agreement by reference (an excerpt of which is attached hereto as **Exhibit B**), expressly provides as follows:

>**F.    Claims Appeals Process**
>
>All transportation providers have the right to submit an appeal for any trip that has been denied.  The appeal must be submitted in writing via letter or fax and contain the following information:
>
>- The reason for the appeal.
>- Documentation to support the service, provided (i.e. driver log with member signature and times of transport).
>- All requests must be received within 30 days from the date of denial.
>- Appeals are considered based upon information provided.
>- The documentation will be reviewed, and the provider will be notified of the payment decision.
>- Payment or denial will be made within the contractual or regulatory requirements.

Ex. B at 22.

Each of Plaintiff's purported claims arise out of and "involv[e] payment of claims" and are subject to Section 15 of the Agreement and the Network Provider Manual's Claims Appeals Process.  Plaintiff makes two defective allegations regards to the applicable dispute resolution provisions.  First, in paragraph 52, Plaintiff provides three conflicting allegations: "Plaintiff had exhausted A2C's Claims Appeals Process, or in the alternative, exhaustion of the Claims Appeals Process was not required because: a) It would be futile for Plaintiff to do so, or in the alternative, b) The Plaintiff has been wrongfully denied access to any applicable appeal procedures."  SAC ¶

13

52. Each of the foregoing subparts of paragraph 52 conflicts with one another and should be disregarded. Additionally, as drafted, Plaintiff could not be "denied access" where the onus is on Plaintiff, and not A2C, to submit such an appeal. As to the futility argument, again, there is no basis for such allegation especially where such procedures are mandated by the express terms of the Agreement.

Accordingly, the SAC should be dismissed for failure to comply with conditions precedent, or, in the alternative, Plaintiff should be to comply therewith.

## CONCLUSION

Due to the numerous pleading deficiencies detailed above, this Court should grant this Motion and dismiss the SAC. Each of Plaintiff's three counts fails to state a claim because Plaintiff does not allege that it performed its own obligations under the Agreement, Plaintiff fails to sufficiently allege any of the elements of a claim for breach of the implied duty of good faith and fair dealing, and Counts II and III are duplicative and mutually exclusive of Count I. Finally, Plaintiff failed to comply with the mandatory dispute resolution provision in the Agreement, which further mandates dismissal of the SAC.

WHEREFORE, for the foregoing reasons, A2C respectfully requests this Court grant the Motion and dismiss the SAC in its entirety, and grant any other and further relief as the Court deems just and proper.

Dated: July 9, 2020                                              **MCDERMOTT WILL & EMERY LLP**

By:     */s/ Michael Austin*
        Michael G. Austin (FBN 457205)
        maustin@mwe.com
        Joseph Wasserkrug (FBN 112274)
        jwasserkrug@mwe.com
        333 SE 2nd Avenue, Suite 4500
        Miami, FL 33131-4336
        T: 305.347.6517 | F: 305.675.8403

14

*Counsel for Defendant Access 2 Care, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **July 9, 2020,** a copy of the foregoing was electronically filed with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Derek P. Usman, Esq.
The Usman Law Firm, P.A.
20701 Bruce B. Downs Blvd.
Suite 207
Tampa, FL 33607
Telephone:  (813) 377-1197
Facsimile: (312) 528-7684
Email: derek@usmanfirm.com
*Counsel for Plaintiff*

　　　　　　　　　　　　　　　　　　　　*/s/ Michael G. Austin*
　　　　　　　　　　　　　　　　　　　　Michael G. Austin

15